UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PREMIUM MERCHANT FUNDING 26, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SONATA CONSTRUCTION LLC, *et al*,<br><br>Defendants. | No. 25-CV-1086 (KMK)<br><br><u>OPINION & ORDER</u> |

<u>Appearances</u>:

Christopher R. Murray, Esq.
Andrew Kamins, Esq.
Gabriel Mendelberg, Esq.
Murray Legal, PLLC
Mineola, NY
*Counsel for Plaintiff*

Hillel I. Parness, Esq.
Parness Law Firm, PLLC
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Premium Merchant Funding LLC ("PMF" or "Plaintiff") brings this Action against Sonata Construction LLC ("Sonata") and Sonata's guarantor George Atala ("Atala") (collectively, "Defendants"), seeking to collect what Plaintiff alleges it is owed under a financing agreement. Defendants counterclaimed, arguing the financing agreement is a cover for a usurious loan. Before the Court is Plaintiff's Letter Motion to Stay Discovery Pending Resolution of its Motion to Compel Arbitration ("Pl.'s Letter Mot.") (Dkt. No. 65). For the following reasons, Plaintiff's Motion is denied.

# I. Background

## A. Factual Background

The Court assumes familiarity with the facts of this case, which were discussed more fully in the Court's Opinion & Order regarding Plaintiff's Motion to Dismiss Defendants' First Amended Counterclaims. (*See* Op. & Order 2–6 (Dkt. No. 41).)

As relevant to the present Motion, Plaintiff and Defendants entered into three agreements (the "Agreements") on September 9, 2024, September 18, 2024, and September 24, 2024. (Op. & Order 2 (Dkt. No. 41).)[1] The Agreements were each styled as "merchant cash advance" payments and each had the same structure, with varying rates and amounts. (*Id.*) A "merchant cash advance," or "MCA," is a financing arrangement where a company sells certain receivables (i.e., future expectations of income based on what the company's clients or customers owe it) to a financer. (*Id.*)

Each of the Agreements contains an identical "Arbitration and Dispute Resolution" clause. (*See* First Mot. to Dismiss Defs.' First Am. Countercls. ("MTD") Ex. A ("First Agreement") § 5 (Dkt. No. 18-2); MTD Ex. B ("Second Agreement") § 5 (Dkt. No. 18-3); MTD Ex. C ("Third Agreement") § 5 (Dkt. No. 18-4).) Each arbitration clause is broad, encompassing "any and all claims or controversies arising out of or in any way related to [the] Agreement . . . or the relationship between PMF and Merchant, whether arising from or relating to the Agreement itself, or arising from alleged extra-contractual facts prior to, during, or subsequent to

---

[1] Defendants have not contested the authenticity of the relevant contracts, which were attached as exhibits to Plaintiff's Motion to Dismiss the Amended Counterclaims and which Defendants repeatedly referenced in their Answer and Counterclaims. (*See* Op. & Order 2 n.1 (Dkt. No. 41); *see also* Pl.'s Letter Mot. 2–3 (arguing that "there is no dispute that the parties entered into the three Agreements that are the subject of Plaintiff's claims against Defendants, and that the Agreements contain an arbitration provision").)

the agreement, and whether involving [claims] grounded in contract, tort, or other [theories] of law or equity." (*See, e.g.*, First Agreement § 5.1.) However, the clauses also contain a carve-out: "Notwithstanding the arbitration obligations set forth in this Arbitration and Dispute Resolution provision, the Parties shall be permitted to seek and obtain monetary relief . . . by filing and maintaining [an] individual . . . court action concerning a Dispute in a state or federal court located in the State of New York . . . ." (*See, e.g.*, *id.* § 5.10.)

When Defendants were unable to make payments required under the Agreements, Plaintiff filed this lawsuit to collect. (*See* Op. & Order 6 (Dkt. No. 41).) Defendants argue that Plaintiff has waived its right to arbitrate by filing this Action, initially in state court, moving to dismiss Defendants' Counterclaims, and engaging in discovery. (*See* Letter Resp. in Opp'n to Pl.'s Letter Mot. ("Defs.' Letter Resp.") 1–2 (Dkt. No. 66).) Plaintiff asserts that its filing in state court fell under the Arbitration Carve-Out in the Agreements and that its right to arbitrate has been preserved by certain non-waiver language in the Agreements. (*See* Pl.'s Letter Mot. 3–4.)

B. Procedural Background

Plaintiff initiated this Action in the Supreme Court of the State of New York, County of Rockland, on January 15, 2025. (*See* Notice of Removal Ex. A (Dkt. No. 1-1).) Defendants filed a Notice of Removal on February 6, 2025. (*See* Notice of Removal (Dkt. No. 1).) Defendants filed their Answer and Counterclaims on February 13, 2025, (*see* Answer & Countercls. (Dkt. No. 4)), and amended on March 28, 2025, (*see* Am. Answer & Countercls. (Dkt. No. 12)). Plaintiff moved to dismiss Defendants' Counterclaims on May 22, 2025, (*see* MTD), Defendants responded on June 19, 2025, (*see* Mem. of Law in Opp'n to MTD (Dkt. No. 21)), and Plaintiff replied on July 7, 2025, (*see* Mem. of Law in Further Supp. of MTD (Dkt. No.

22)). On October 1, 2025, Defendants moved for a temporary restraining order and preliminary injunction after Plaintiff circulated new UCC lien notices to Defendants' creditors. (*See* Proposed TRO & O.S.C. for Prelim. Inj. (Dkt. No. 23); *see also* Op. & Order 7 (Dkt. No. 41).) The Court granted a temporary restraining order that same day. (*See* T.R.O. & O.S.C. for Prelim. Inj. (Dkt. No. 27).) Following supplemental submissions (*see* Suppl. Decl. of George Atala (Dkt. No. 38); Decl. of Ariel Bouskila (Dkt. No. 39)), the Court granted a preliminary injunction and granted in part and denied in part Plaintiff's Motion to Dismiss Defendants' Counterclaims on March 30, 2026. (*See* Op. & Order (Dkt. No. 41).) The Court dismissed Defendants' Counterclaims for fraudulent inducement, criminal usury, unjust enrichment, deceptive trade practices, and common law fraud, but denied Plaintiff's Motion as to Defendants' Counterclaims under RICO and for tortious interference and conversion to the extent the conversion counterclaim is premised on withdrawals unauthorized by the Agreements. (*See id.* at 45–46.) Plaintiff filed an Answer to Defendants' Counterclaims on April 21, 2026. (*See* Reply to Am. Countercls. (Dkt. No. 45).)

On July 15, 2026, Plaintiff filed a Letter Motion seeking leave to file a motion to compel arbitration. (*See* Req. to File Mot. to Compel Arbitration (Dkt. No. 59).) Following a status conference during which the Court instructed the Parties to submit Letter Briefs regarding whether the Court should stay discovery pending any motion to compel, (*see* Dkt. (minute entry for July 16, 2026)), Plaintiff filed its Letter Motion to Stay Discovery Pending Resolution of its Motion to Compel Arbitration on July 29, 2026, (*see* Pl.'s Letter Mot.). Defendants filed their Response on August 5, 2026. (*See* Defs.' Letter Resp.)

On September 15, 2026, the Court held a pre-motion conference regarding Plaintiff's proposed Motion to Compel Arbitration and adopted a briefing schedule. (*See* Dkt. (minute

entry for Sep. 15, 2026); Mot. Scheduling Order (Dkt. No. 74).) Plaintiff filed its Motion to Compel Arbitration on October 20, 2026. (*See* Pl./Counterdef. PMF's Mot. to Compel Arbitration & Stay Proceedings (Dkt. No. 77).) Defendants' Response is due November 16, 2026, and Plaintiff's Reply is due December 4, 2026. (*See* Mot. Scheduling Order (Dkt. No. 74).)

## II. Discussion

### A. Standard of Review

"[U]pon a showing of good cause a district court has considerable discretion to stay discovery pursuant to [Rule] 26(c)." *Pullman v. Collins*, No. 24-CV-1383, 2025 WL 1004731, at *1 (S.D.N.Y. Apr. 3, 2025) (quoting *K.A. v. City of New York*, No. 16-CV-4936, 2022 WL 3996710, at *2 (S.D.N.Y. Sept. 1, 2022)); *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013). "In evaluating good cause, courts will consider: (1) the breadth of discovery sought (and the burden of responding to it), (2) the strength of the underlying motion, and (3) the risk of prejudice to the party opposing the stay." *Pullman*, 2025 WL 1004731, at *1 (quoting *Idle Media, Inc. v. Create Music Grp., Inc.*, 24-CV-805, 2024 WL 2946248, at *3 (S.D.N.Y. June 11, 2024)).

But "[i]n cases where 'a party seeks a discovery stay pending a motion to compel arbitration, courts [in this Circuit] have stayed without considering the three-factor test.'" *Mossiah v. Mulligan Security LLC*, No. 25-CV-4561, 2025 WL 3478844, at *1 (S.D.N.Y. Dec. 3, 2025) (quoting *Oestreicher v. Equifax Info. Servs.*, No. 23-CV-239, 2023 WL 3819378, at *1 (E.D.N.Y. June 5, 2023)). Indeed, "a stay pending a motion to compel arbitration should be granted absent compelling reasons to deny it." *See id.* (internal quotation marks omitted)

(quoting *Alvarez v. Experian Info. Sol'ns, Inc.*, No. 19-CV-3343, 2021 WL 2349370, at *2 (E.D.N.Y. June 7, 2021)).

B. Analysis

"[Defendants] oppose[] [Plaintiff's] motion to stay discovery on the grounds that . . . [Plaintiff] waived its right to arbitrate through active participation in litigation . . . . Accordingly, this Court applies the traditional three-factor test evaluating motions to stay discovery . . . ." *See Mossiah*, 2025 WL 3478844, at *1. Considering the three factors, the Court finds that the weakness of Plaintiff's Motion to Compel Arbitration outweighs the other two factors, and accordingly, discovery should continue.

1. The Breadth of Discovery Sought

Plaintiff argues that "Defendants' assertion of RICO claims exploded the scope and complexity of discovery that will be required over and above the limited discovery that would have been required to resolve the claims that Plaintiff originally asserted." (Pl.'s Letter Mot. 4.)

"Where courts have found discovery to be unduly burdensome, there is often a showing that the [nonmoving party's] requests were overbroad or that the anticipated discovery would be particularly voluminous." *Oestreicher*, 2023 WL 3819378, at *2. Plaintiff has cited 166 discovery requests served by Sonata, arguing that the requests "go[] well beyond the limited discovery contemplated by the Parties when they agreed to the Arbitration Carve-Out in the Agreements." (Pl.'s Letter Mot. 4) Plaintiff characterizes these requests as "fishing expeditions into the general relationship between PMF and other entities," and notes that Defendants request "all" documents in several enumerated categories. (*See id.* at 4 n.6.) Defendants have not disputed the breadth of discovery, arguing only in the context of asserting prejudice that "PMF's

conduct demonstrates that it views discovery as its personal tool to advance only its own litigation interests, and not as a prejudicial burden." (*See* Defs.' Letter Resp. 3.)

The Court recognizes that the discovery sought by Defendants "may drain[] the [P]arties' resources while [Plaintiff's] motions pend." *Dougherty v. Zynga Inc.*, No. 26-CV-2772, 2026 WL 1218876, at *2 (S.D.N.Y. May 4, 2026) (internal quotation marks and citation omitted). Furthermore, additional discovery may be "'a potential waste of resources,' particularly because [Plaintiff] seeks to compel arbitration in lieu of litigation." *Oestreicher*, 2023 WL 3819378, at *2 (quoting *Alvarez*, 2021 WL 2349370, at *2). However, the discovery is related to the counterclaims that have survive a motion to dismiss. Weighing these competing interests, the Court finds that this factor slightly weighs in favor of a stay of discovery pending resolution of Plaintiff's Motion to Compel Arbitration.

2. The Strength of the Underlying Motion

When deciding Plaintiff's Motion to Compel Arbitration, the Court will "follow a two-part test to determine the arbitrability of claims . . . consider[ing] (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advs. Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). There does not appear to be any dispute as to part one of the test, and Plaintiff has argued persuasively that the arbitration clause in the Agreements is sufficiently broad to encompass all claims in this Action. (*See* Pl.'s Letter Mot. 2–3.) Indeed, rather than arguing that the agreement to arbitrate is invalid or that the present dispute falls outside its scope, Defendants focus their Opposition on Plaintiff's potential waiver of arbitration arising out of its decision to litigate the present Action "for nearly 20 months." (*See* Defs.' Letter Resp. 1–2.)

Plaintiff argues that it has not waived its right to arbitration by "initially filing in state court and filing a pre-answer motion to dismiss counterclaims after Defendants removed the case to federal court," because of the Arbitration Carve-Out and non-waiver provisions in the Agreements. (*See* Pl.'s Letter Mot. 3.) The Arbitration Carve-Out is described above, and the purported non-waiver language includes a provision stating that "[n]o failure on the part of PMF to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof," and another provision stating that "[t]he purpose of this Arbitration and Dispute Resolution provision is to give binding effect to the Parties' intent to resolve all Disputes through binding bilateral arbitration *except to the extent of a Permitted Court Action* [set forth in the Arbitration Carve-Out]." (*See* Pl.'s Letter Mot. 3 n.4 (citing Agreements §§ 4.4, 5.13) (emphasis added).)

In support of its position, Plaintiff relies heavily on a recent decision by Judge Liman analyzing an identical arbitration provision in a contract between PMF and another litigant. (*See* Pl.'s Letter Mot. 3–4 (citing *PEB, Inc. v. Premium Merch. Funding 26, LLC*, 2025 WL 1802996, at *6 (S.D.N.Y. July 1, 2025)).) In that case, PMF had filed an action in state court, and the defendant in the state court action filed RICO claims in federal court. *See PEB*, 2025 WL 1802996, at *4. Judge Liman found that PMF "ha[d] not asked th[e] [c]ourt to take action consistent with the claims before it being litigable, only later to claim that they must be arbitrated," nor could PMF "be accused of using the State Court Action as a ploy to obtain a procedural advantage in the RICO arbitral action," because it "did not initiate the RICO action and there [was] no evidence it was aware that the RICO action would be filed against it." *See id.* at *9. But the present Action is not in the same procedural posture: Plaintiff asks the Court to compel arbitration not just of the RICO claims against it, but of all claims in this Action,

including the claims Plaintiff chose to bring in litigation pursuant to the Arbitration Carve-Out. (*See* Pl./Counterdef. PMF's Mot. to Compel Arbitration & Stay Proceedings 1 (Dkt. No. 77).) Furthermore, in *PEB*, PMF had not engaged in any motion practice on the RICO claims at issue prior to moving to compel arbitration. *See PEB*, 2025 WL 1802996, at *4, 9–10.

By contrast, in the present case, Plaintiff filed a Motion to Dismiss seeking dismissal of the Counterclaims against it. (*See* MTD.) Only after the Court issued an adverse decision on that Motion, as well as a preliminary injunction barring certain of Plaintiff's conduct, did Plaintiff raise for the first time its right to arbitrate any of the claims in the present case. (*See* Op. & Order 44–46 (Dkt. No. 41); Req. to File Mot. to Compel Arbitration (Dkt. No. 59).) This tips the scales. As Defendants have correctly noted, and as Judge Liman found in *PEB*, "[i]f, after an adverse ruling, a party who invoked the powers of the court to hear a case suddenly asks a court to stop in its tracks mid-trial by moving to compel arbitration, the court is not powerless to prevent such abuse." (Defs.' Letter Resp. 1 (quoting *PEB*, 2025 WL 1802996, at *9).)

When considering whether a party has waived its right to arbitrate, the relevant question is "[d]id the moving party knowingly relinquish the right to arbitrate by acting inconsistently with that right? In answering that question, [the Court] may consider all aspects of the moving party's conduct . . . as long as [it] do[es] not do so through the lens of prejudice." *Doyle v. UBS Fin. Servs., Inc*, 144 F.4th 122, 130 (2d Cir. 2025). The Second Circuit found in *Doyle* that parties who had moved to dismiss the claims against them and moved to compel arbitration only after denial of their motion to dismiss had "knowingly relinquished their right to arbitrate . . . by acting inconsistently with that right." *See id.* at 133. "Arbitration is not a fallback position. It is not a second bite at the apple. Rather, a party with a claim to arbitration faces a binary choice: litigation or arbitration." *Id.* at 131.

In addition to arguing that "PMF clearly waived arbitration by suing Sonata and moving to dismiss Sonata's Counterclaims," and focusing in particular on the fact that PMF has moved to compel arbitration only following adverse rulings in litigation, Defendants also point to "[e]ngaging in discovery in a judicial forum" as "inconsistent with arbitration because courts typically allow for broader discovery than the arbitral forum." (*See* Defs.' Letter Resp. at 1–2.) In light of *Doyle*, the Court agrees that such conduct may constitute a waiver of arbitration. Simply put, the non-waiver provisions are not silver bullets that immunize Plaintiff from being deemed to have waived their contractual right to arbitrate. *See, e.g., Boustead Sec., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 449 n.3 (S.D.N.Y. 2023) (finding that a court's analysis is not affected by a provision stating that "'failure to insist at any time upon strict compliance with [the agreement] or any of its terms' shall not 'constitute or be considered a waiver' . . . of 'any of [a party's] respective rights or privileges'" (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. NCR Corp.*, 376 F. App'x 70, 73 (2d Cir. 2010) (summary order))); *Lawrence v. NYC Med. Prac., P.C.*, No. 18-CV-8649, 2023 WL 4706126, at *13 n.7 (S.D.N.Y. July 21, 2023) (finding that a "no waiver clause" in an arbitration agreement "may itself be impliedly waived under certain circumstances" (internal quotation marks omitted) (quoting *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015))).

Without resolving the merits of Plaintiff's Motion to Compel Arbitration, the Court finds that this factor weighs strongly against a stay of discovery.

3. The Risk of Prejudice to Defendants

Plaintiff asserts that Defendants will not be prejudiced by a stay of discovery, because any such stay will be short, will not preclude future discovery in arbitration, and because the Court's preliminary injunction remains in place. (*See* Pl.'s Letter Mot. 5.) Defendants raise a

lack of "confidence that any arbitration would finish within a reasonable timeframe" given Plaintiff's "disregard for procedural rules" and the time and money Defendants have spent in litigation. (*See* Defs.' Letter Resp. 3.) Defendants further contend that they have been "trying to get Defendant George Atala's business and life back in order in the wake of PMF's criminally usurious loans" and that Atala has been "forced to borrow money to litigate this case." (Defs.' Letter Resp. 3.)

At the outset, the Court notes that it is not, at the present moment, tasked with resolving whether this Action should be stayed pending arbitration—only whether discovery should be stayed until the Court can make a determination on Plaintiff's Motion to Compel Arbitration and Stay. Plaintiff has now filed that Motion, and it will be fully briefed by December 4, 2026. Furthermore, "Plaintiff does not identify any specific documents, witnesses, or other sources of information that might become unavailable during a stay." *Goven v. Support Pets LLC*, 26-CV-4226, 2026 WL 2583128, at *3 (S.D.N.Y. Sep. 1, 2026). Plaintiff does, however, argue that this is because "PMF has been dragging its feet on discovery and has not yet provided requested documents and information, while still making their own demands on Sonata." (*See* Defs.' Letter Resp. 3.)

During the brief pendency of a stay of discovery, Defendants will also not be tasked with responding to Plaintiff's discovery requests, so the Court does not find that the financial issues cited by Defendants will be exacerbated by such a stay. And "the 'passage of a reasonable amount of time, without any other form of attendant prejudice, cannot itself constitute prejudice sufficient to defeat a motion to stay discovery.'" *Dougherty*, 2026 WL 1218876, at *2. Thus, given these competing interests, the Court finds that this factor is neutral.

In sum, "on the limited and preliminary review appropriate to evaluating a stay application," *Dougherty*, 2026 WL 1218876, at *2, the Court finds that the weakness of the underlying motion outweighs the other two factors, and Plaintiff is not entitled to a stay of discovery pending resolution of its Motion to Compel Arbitration.

III. Conclusion

For the reasons set forth above, Plaintiff's Letter Motion to Stay Discovery Pending Resolution of its Motion to Compel Arbitration is denied. The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 65.

SO ORDERED.

Dated: October 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge